UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



| | |
|---|---|
| STEPHEN A. PARSON, LEON BENJAMIN, BRUCE L. WALLER SR. | ) ) ) CIVIL NO. 3:16CV013 |
| V. | ) ) DEMAND FOR JURY TRIAL |
| JAMES B. ALCORN, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE VIRGINIA STATE BOARD OF ELECTIONS; CLARA BELLE WHEELER, IN HER OFFICIAL CAPACITY AS VICE-CHAIR OF THE VIRGINIA STATE BOARD OF ELECTIONS; SINGLETON B. MCALLISTER, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE VIRGINIA STATE BOARD OF ELECTIONS. | ) |

## VERIFIED COMPLAINT

1. Next week, ballots must be made available and will begin to be mailed to Virginians who wish to vote absentee in the Republican Presidential Primary. This Friday, the State Board of Elections ("SBE"), which is responsible for administering elections in Virginia, will have its final meeting before the primary. And in fewer than sixty days, Virginia will hold its Republican Presidential Primary. The Republican Party of Virginia ("RPV") and the State Board of Elections ("SBE"), however, are confounding the primary process by requiring all voters to sign a loyalty oath. As of today, in order to cast a ballot for a Republican candidate, a voter must sign a form stating: "My signature below indicates I am a Republican." Prior to this statement, the voter is informed that the Republican Party is holding the primary; this is not true, as the RPV has opted for an open primary administered by the Commonwealth of Virginia and paid for by the Virginia taxpayers. While the party might be free to close its ranks if it funded

and administered its primary, the RPV chose instead to have the state run the election. *See* Code of Virginia § 24.2-545. That choice has consequences. As the Fourth Circuit has already held, "when the party chooses to hold a primary operated and funded by the state that it *must allow all voters to participate*." *Miller v. Brown*, 503 F.3d 360, 368 (4th Cir. 2007) (emphasis added). The RPV cannot have its cake and eat it too, and the SBE cannot require a loyalty oath.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this matter under 28 U. S. C. §§ 1331, 1343(a)(3), 1357, 1367 and 42 U. S. C. §§ 1983 and 1988. This Court has jurisdiction to grant declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U. S. C. §§ 2201 and 2202.

3. This Court has personal jurisdiction over defendants because they are residents of Virginia.

4. Venue is proper in this district pursuant to 28 U. S. C. § 1391(b).

## PARTIES

5. Plaintiff Stephen A. Parson is an African-American resident of Virginia who wishes to vote in the 2016 Virginia Republican Presidential Primary, but is unwilling to sign the loyalty oath.

6. Plaintiff Leon Benjamin is an African-American resident of Virginia who wishes to vote in the 2016 Virginia Republican Presidential Primary, but is unwilling to sign the loyalty oath.

7. Plaintiff Bruce L. Waller Sr. is an African-American resident of Virginia who wishes to vote in the 2016 Virginia Republican Presidential Primary, but is unwilling to sign the loyalty oath.

8. Defendants James B. Alcorn, Clara Belle Wheeler, and Singleton B. McAllister are sued in their respective official capacities as Chairman, Vice-Chair, and Secretary of the Virginia State Board of Elections, which is responsible for the regulation of Virginia Elections.

## FACTUAL BACKGROUND

9. Absentee ballots for the 2016 Virginia Republican Presidential Primary are scheduled to be made available and mailed on January 15, 2016. Those ballots are presumably being printed, or at least going to be printed very soon.

10. On January 8, 2016, the SBE will hold its final scheduled meeting before the Republican Presidential Primary.

11. In addition to in-person and by-mail absentee voting beginning on January 15, 2016, on March 1, 2016 Virginians will cast their votes for the Republican nominee for President of the United States.

12. But as of right now, Virginians cannot vote for their nominee of choice unless they vow they are indeed an unequivocal "Republican." The SBE, at the behest of the RPV, will require all voters who wish to cast a ballot for a Republican candidate to sign a loyalty oath or give up their right to vote. This requirement is unlawful on its face and is especially repugnant when set against Virginia's sordid history of discrimination.

### I. The Oath

13. In Virginia, voters do not register by party, which means any registered voter can vote in a state primary. When it comes to primaries, political parties have a choice. They can fund and run the process themselves (and limit participation to its own members), or they can allow the Commonwealth to run and fund the election. Code of Virginia § 24.2-545. If the party chooses the latter approach, however, "each registered voter of the Commonwealth shall be

given an opportunity to participate in the presidential primary of the political party." *Miller*, 503 F.3d at 368.

14. The RPV has chosen to have the Commonwealth run its 2016 presidential primary. Nonetheless, the RPV is planning, with the state's cooperation and implementation, to require every voter to sign a loyalty oath as a prerequisite to voting in the presidential primary. Specifically, the RPV and the SBE will require any voter who wishes to vote for a Republican candidate to sign a document stating: "My signature below indicates that I am a Republican." The forms will be collected and the names of those who sign the form will be put in SBE's database. The form also requests the voter's email address and phone number.

15. The origins of the oath began in September 2015 when the RPV decided to issue a "Statement of Republican Party Affiliation" to be used on election day. Two months later, the RPV asked the SBE to approve its form. Several weeks later, on December 16, 2016, the SBE approved a different form than the one submitted by the RPV, and certified that voters in the 2016 Republican presidential primary will have to sign a form pledging fealty to the Republican Party.

16. Even at first blush this timeline creates serious legal problems. The Virginia Code empowers the SBE to "make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws." Code of Virginia § 24.1-103. The Board also has the power to "prescribe appropriate forms and records for the registration of voters, conduct of elections, and implementation of this title, which shall be used throughout the Commonwealth." *Ibid.*

17. But that power is circumscribed by another provision that requires the SBE to set the rules of the road 90 days before the primary. Code of Virginia § 24.2-545. That provision

4

provides: "The requirements applicable to a party's primary shall be determined at least 90 days prior to the primary date and certified to, and approved by, the State Board." *Ibid.* The SBE did not comply with this requirement in creating the oath form. Indeed, it certified the form on December 16, a mere 76 days before the primary, in clear violation of the 90 day rule.

18. While the RPV proposed a form in September, that is of no moment because the SBE did not approve what the RPV proposed. Instead, the resulting form is more intimidating in its language and also contains errors. For example, the new form cites Virginia Code, making it appear like the form is required under penalty of law. It also contains the ominous threat that "[a]ny voter refusing to sign the statement form cannot vote in this Republican Party nominating process." That statement was not present in the form developed by the RPV.

19. The form also misstates fact and law when it says state law "allows the political party holding the primary to determine requirements for voting in the primary" without any sort of qualification or limitation. This representation is false. The RPV is not administering the primary, the state is. And state law does not allow the party to determine all requirements to vote, nor could it in such a broad fashion. While state law certainly permits the party to choose whether it will have a closed convention or a state-sponsored open primary, the party does not get to decide who is and who is not an acceptable voter among those otherwise rightfully entitled to vote. In any event, the SBE did not approve the form submitted by the RPV.

20. The RPV also did not follow the Republican National Committee's ("RNC") rule that the statement be published "in at least one (1) newspaper having a general circulation throughout the state . . . at least ninety (90) days before such qualificatio[n] become[s] effective." RNC Rule 16(d)(2). Because the RPV did not do so, Virginia's delegation to the National Convention could be subject to a credentials challenge.

5

21. Returning to the oath itself, voters who vote in person and those who vote absentee (either in-person or by-mail) must sign the form. In the RPV's own words, the form is "required to be signed to participate in the Republican Primary or vote absentee." Indeed, "[v]oters won't be allowed to participate in the primary if they do not sign the form."

22. Beyond releasing a copy of the form, however, there has been little guidance from the RPV or the SBE, and neither have been responsive. The enforcement of the oath requirement will be up to the local electoral boards and presumably the volunteers at the precincts. Officials have provided no instruction on how many forms should be available on election day. And no county will provide the form in a language other than English except Fairfax County, which will have a Spanish version.

23. The goal of the oath is clear. It is to stop anyone who is not an unequivocal "Republican" from voting in the primary. As John Findlay, RPV's Executive Director, put it: "The purpose of the Statement is to build our Party and prevent Democrats from voting in the March 1st Republican Presidential Primary." But that is precisely what the RPV cannot do because it has elected to use state money and state infrastructure to fund and run its primary.

24. Unsurprisingly, voters are dismayed. The Goochland County Republican Committee has resolved it "strongly objects to the use of a statement of a party affiliation in the March 1, 2016 Virginia Presidential Primary." And it has requested the RPV "reconsider and, as in prior years as recently as 2012, withdraw their request to the State Board of Elections for use of the statement of party affiliation."

25. Even those who once supported the affiliation statement have since changed their mind. Former First District Chairman Russ Moulton originally supported the RPV's decision to

require a statement of affiliation prior to voting in the primary. But he now says, "I have come to believe with deeper understanding [the affiliation statements] are a mistake."

26. Due to the lack any meaningful guidance provided by those implementing the loyalty oath, it is unclear whether the oath form has been or is being included with absentee ballots. But given the short time remaining before the election, it appears very likely that the form is either already being included or will be very soon.

27. This is not the first time the RPV has tried to force a loyalty oath on voters. In both the 2008 and 2012 primaries, the RPV voted to require a loyalty pledge but scrapped it before the primary took place. The 2012 pledge said: "I, the undersigned, pledge that I intend to support the nominee of the Republican Party for president." After the American Civil Liberties Union threatened a lawsuit, RPV withdrew the form. The new pledge goes further than the one in 2012 because it requires a statement of identity rather than just a statement of action. And like the 2012 oath, this one should be scrapped.

## II. Virginia's Discriminatory Past and the Lasting Effects

28. Virginia has a sad history of discrimination against Blacks and Hispanics. And that history is critical to understanding the real-world effect of the Republican pledge. Even after the 200-year-old practice of slavery ended in Virginia, the state continued to discriminate against Black citizens. It imposed a poll tax until 1966 and a literacy test until 1974. *Harper v. Va. State Bd.*, 383 U.S. 663 (1966); *Virginia v. United States*, 386 F. Supp. 1319 (D. D.C. 1974), aff'd, 420 U.S. 901 (1975). During that same period, Virginia forbade miscegenation and fought school desegregation. *Loving v. Virginia*, 388 U.S. 1 (1967); *Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1356 (1989).

29. Virginia likewise has a long history of polarized voting. For example, in 1989 the Fourth Circuit recognized that "the white majority [in Norfolk] normally voted sufficiently as a bloc to defeat the combined strength of strong minority support plus white crossover votes for minority preferred candidates who sought a second seat on the [city] council." *Collins v. City of Norfolk*, 883 F.2d 1232, 1240 (4th Cir. 1989). And in 2012, Mitt Romney won 61% of the White vote, while Barack Obama won 93% of the Black vote and 64% of the Hispanic vote, confirming that the balkanization of voters in Virginia continues today.

30. Minorities continue to feel the effects of discrimination in Virginia even beyond voting. Unemployment rates and poverty rates for Blacks and Hispanics exceed Whites. Blacks are less likely to have a college education than Whites. Hispanics are less likely to own a house. And these social and historical conditions set the background against which the Republican Party operates. The loyalty oath will exacerbate these ongoing effects and will disproportionately deny Blacks and Hispanics their opportunity to vote in Virginia's primary.

31. The loyalty oath will produce long lines and interminable waits for all voters. As one commenter has already noted, the loyalty oath will be "a nightmare to implement." Because this requirement is untested and neither the SBA nor the RPV have provided no plan for printing these oaths—nor has it given any instructions on how many to print—the oath looks certain to create long lines as poll volunteers and election officials try to stumble through the new requirement. Election volunteers have already warned "the [oath] will create long lines."

32. Long lines are vexing for all voters, but they have a disparate impact on Blacks and Hispanics. Long lines require voters to expend time that they could have spent doing something productive. While wealthy individuals can perhaps afford to wait hours to vote—as some Virginians had to do in the 2012 Presidential election—lower-income individuals working

8

hourly jobs do not have that luxury. And because minorities make up a disproportionate percentage of lower-income Virginians, these long lines will discourage them from voting at a higher rate than Whites.

33. The RPV's loyalty oath also imposes the burden of fear and backlash. According to the Executive Director of the Republican Party of Virginia, after the primary they plan to data mine the signed forms. Not only does that data mining violate voters' privacy; it will disproportionately discourage Black voters from turning out to the primary. Given Virginia's unfortunate history of racially polarized voting, if the Republican Party were to release the names of Black voters who had publicly proclaimed that they "are Republicans," those individuals could face backlash from their communities.

## CAUSES OF ACTION

### COUNT 1 — Violation of the Voting Rights Act

34. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth here.

35. Section 11(b) of the VRA prohibits voter intimidation. 52 U. S. C. § 10307(b). Here, color of state law is being used to make claims that can only serve to intimidate, and such power cannot be used for the intimidation of those who are rightfully entitled to vote. This violates § 11(b) of the VRA.

36. Section 2 of the Voting Rights Act prohibits any "voting qualification . . . which results in a denial or abridgement of the right of any citizen . . . to vote on account of race or color." 52 U. S. C. § 10301(a). The loyalty oath amounts to an illegal voting qualification because it conditions the right to vote on saying "I am a Republican," and that will disparately burden Blacks and Hispanics.

37.     The loyalty oath will produce long lines and interminable waits for all voters, but it will hit Blacks and Hispanics especially hard. Poor individuals (who are disproportionately Black and Hispanic in Virginia) cannot afford to wait hours to vote. Thus, these long lines will discourage them from voting at a higher rate than Whites.

38.     The loyalty oath also imposes the burden of fear and backlash. Given Virginia's history of racially polarized voting, Black voters who must publicly proclaim they are Republican could face backlash from their communities.

39.     The loyalty oath also amounts to a literacy test. Those who do not speak English (disproportionately Hispanics in Virginia) will be unable to understand the form or know what they are being told to sign, leading many to forego voting at all.

### COUNT 2 — Violation of the Fourteenth Amendment

40.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth here.

41.     "[T]he power of the states to determine the manner of holding elections is limited by the Equal Protection Clause of the Fourteenth Amendment." *Socialist Workers Party v. Hechler*, 890 F.2d 1303, 1309 (4th Cir. 1989). The loyalty oath violates that Clause in three ways.

42.     *First*, this requirement will disenfranchise voters who wish to vote for a Republican but are unwilling to publicly declare that they "are Republicans."

43.     *Second*, this requirement will disenfranchise voters who believe the secret ballot is important.

44.     *Third*, only those citizens who support a Republican candidate for President have to sign an oath. This will uniquely deter citizens from participating in the Republican primary.

## COUNT 3 — Violation of the First Amendment

45. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth here.

46. "[F]reedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. FAIR*, 547 U.S. 47, 61 (2006). The oath requirement violates the First Amendment, which forbids conditioning a citizen's right to vote on an oath declaring he's a Republican.

## COUNT 4 — Violation of State Law

47. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth here.

48. Section 24.2-545 of the Code of Virginia provides: "The requirements applicable to a party's primary shall be determined at least 90 days prior to the primary date and certified to, and approved by, the State Board." *Ibid.* The SBE did not comply with this requirement in creating the oath form.

49. First, the SBE did not "approve" the form certified by the RPV. Instead it created its own form, which was *ultra vires*. *See* § 2.2-4026.

50. Second, the SBE "approved" the form on December 16, a mere 76 days before the primary, in clear violation of the 90 day rule. Thus, the oath requirement is unlawful. *See* § 2.2-4026.

51. Section 24.2-545 permits the SBE to require the "signing of a pledge by the voter of his intention to support the party's candidate when offering to vote in the primary." Code of Virginia § 24.2-545(A). It does not authorize the SBE to require the signing of a pledge by the

11

voter of his affiliation with the party itself. Thus, the oath required by the SBE for the 2016 Virginia Republican Primary is *ultra vires*. See § 2.2-4026.

## PRAYER FOR RELIEF

52. Plaintiffs incorporate all preceding allegations here by reference, and seek judgment and relief from the Court as follows:

53. Declare the loyalty oath violates the First and Fourteenth Amendments to the Constitution as well as Section 2 of the Voting Rights Act and state law.

54. Issue preliminary and permanent injunctions enjoining Defendants and their agents, employees, and successors, and all persons acting in concert with them, from enforcing or giving any effect to the oath requirement and that no voter may be required to sign a form stating that he is a Republican as a condition of voting in the 2016 Virginia Republican primary.

55. Issue a temporary restraining order to prevent the SBE from including the oath form in any absentee ballots mailed.

56. If the Court deems it appropriate, subject Virginia to the preclearance requirement (being "bailed-in") under Section 3(c) of the VRA. 52 U. S. C. § 10302(c).

57. Grant other relief this Court deems appropriate, including but not limited to an award of Plaintiffs' attorneys' fees and costs.

## JURY DEMAND

58. Plaintiffs demand a trial by jury of all issues triable by right to a jury.

Dated: January 6, 2016

Respectfully submitted,

/s/ Chester Smith
Chester Smith
Smith Law Group, PLLC
293 Independence Boulevard, Suite 231
Virginia Beach, VA 23462
Phone: (757) 490-3181
Email: chucsmit@live.com

13

## Verification

I, Stephen A. Parson, declare as follows:

1. I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the Commonwealth of Virginia. I am eligible to vote in an election of the office of the President of the United States.

2. I have personal knowledge of the events set out in the foregoing Verified Complaint based on my review of publicly available documents. If called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct.

Executed on __Jan 6_____, 2016.

_____
Stephen A. Parson SR