UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| STEPHEN A. PARSON, ET AL. | ) |
| | ) |
| v. | ) CIVIL NO. 3:16CV-13-MHL |
| | ) |
| JAMES B. ALCORN, ET AL. | ) |
| | ) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Virginia law and the Republican National Committee share a common goal: openness. Virginia law requires when a political party chooses to have an open primary, "it must allow all voters to participate." *Miller v. Brown*, 503 F.3d 360, 368 (4th Cir. 2007). The Republican National Committee adheres to that principle as well: "Be it resolved, that the Republican Party is the party of the open door." Republican National Convention Rules 2 (2012). But the Republican Party of Virginia ("RPV") and the State Board of Elections ("SBE") are quickly closing that door. And in an attempt to speed its closure, Defendants have filed a meritless Motion to Dismiss ("Motion"). It should be denied. There is no substance to the claim that Plaintiffs lack standing. Further, the Motion misunderstands what Federal Rule of Civil Procedure 8 requires. Plaintiffs provided "a short and plain statement of the[ir] claim[s] showing that [they are] entitled to relief." Fed R. Civ. P. 8(a)(2). And Defendants are clearly on notice of these claims, as their lengthy arguments regarding the merits show. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). For these reasons, the Motion should be denied.

**I. PLAINTIFFS HAVE STANDING**

This Court has subject matter jurisdiction, despite Defendants' claim to the contrary. But before turning to the merits of this issue, it is important to note "the district court should only

rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (emphasis and internal quotation marks omitted). If a challenge to the court's subject matter jurisdiction implicates the merits of the underlying claim, then "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Ibid.* (quoting *Garcia v. Copenhaver, Bell & Associates*, 104 F.3d 1256, 1261 (11th Cir. 1997)). This approach promotes judicial economy and provides "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion. . . ." *Ibid.*

Thus, because the question of subject matter jurisdiction and the merits are tied together in this case, the court should treat Defendant's 12(b)(1) Motion as a Rule 56 (Summary Judgment) motion. Under that approach, the Court may not decide disputed factual issues. *Morrison*, 323 F.3d at 925.

In any event, this Court does have subject matter jurisdiction. The doctrine of standing is an integral component of the case or controversy requirement. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997). "There are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

Defendants do not dispute Plaintiffs face imminent injury. *See* Mem. In Supp. Of Mot. To Dismiss, at p. 4, (Page ID# 85). Instead, they argue Plaintiffs' injury is not traceable to the challenged conduct and is not redressable. *Ibid.* They are wrong on both counts.

*First*, the injury (the disenfranchisement of countless Virginia voters) is directly traceable to the SBE's "approval" of the Republican loyalty oath. The SBE is the one with the power to approve or disapprove of requirements for Virginia primaries. *See* Va. Code § 24.2-545. Without the SBE's approval, the loyalty oath would not have gone into effect. It is the approval that will cause the injury of which Plaintiffs complain. Defendants' efforts to blame the RPV miss the mark. This is a state-run and administered primary with the members of the SBE being the prime movers of the loyalty oath.

The SBE's approval violated all manner of law, not to mention basic notions of fairness. For instance, Commissioner of Elections, Edgardo Cortés, maintains his department "sent guidance to Virginia's general registrars and local electoral board members on December 15, 2015." Ex-C to Mem. In Opp. To Plfs' Mot. For Temp. Restraining Order and Prelim. Inj., p. 2 (Page ID# 160). He fails to explain how the department could send out guidance before the loyalty oath was even approved (on December 16, 2015). *See* Ex. B to Mem. In Opp. To Plfs' Mot. For Temp. Restraining Order and Prelim. Inj., p. 8–9 (Page ID# 153–54). And he makes no claim that the "guidance" is publicly available nor has he identified any efforts to make it publicly available. The department cannot have secret guidance that it deploys only when it is advantageous to the SBE. And Virginians deserve better than backroom deals.

But more importantly, the fact that the department supposedly sent detailed guidance on the oath *before* the SBE actually voted and approved the form can mean only one thing: the SBE had already decided to approve the form before it voted. Democracies die behind closed doors.

That the SBE would create a partisan oath form out of public view, applicable in only one of several primaries, violates fundamental notions of due process and administrative law. In further support of the fact that the SBE must have created this form behind closed doors is that it ignored any public comment that was negative. *See ibid.* All the vast majority of the public comment was negative (save the RPV's Executive Director, who was in favor of the oath and made clear that it was designed to prevent certain voters from voting). *See ibid.* But the Board ignored it all, which further proves they must have agreed in a back-room deal, were uninterested in public comment or input, and were unwilling to disturb bureaucratic convenience.

In any event, the SBE insists "the complained-of decision is 'the decision of the Virginia Republican Party' to establish rules for governing its imminent primary election." Mem. In Supp. Of Mot. To Dismiss, at p. 4, (Page ID# 85) (citing *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997). But *Marshall* is inapt. There, the Republican Party opted to use an open primary. 105 F.3d at 904. The plaintiffs sued the SBE members complaining that the holding of the open primary violated their rights. *Ibid.* The Fourth Circuit concluded the SBE members were the wrong defendants, and that the source of the plaintiffs asserted injury was the Republican Party's decision to hold an open primary. *Id.* at 906. Here, however, Plaintiffs do not complain about the RPV's decision to hold an open primary; in fact, they welcome it as surely does the Republican National Committee. *See* Republican National Committee Rules 2 (2012) ("Be it resolved, that the Republican Party is the party of the open door."). Instead, their injury traces to the SBE's creation of the oath form—a form that differs from that submitted by the RPV. The SBE created the form, directed the form to be printed and included with ballots. Thus, the SBE is the source of the injury.

Indeed, examining the actual form shows it is the SBE's action that is the source of Plaintiffs' injury. The RPV certified the following form to the SBE:



But that is not what the SBE "approved." Instead, the SBE created its own form for the Republican Primary and made it more intimidating:

5

Commonwealth of Virginia

Republican Presidential Primary
Tuesday, March 1, 2016

NOTICE TO VOTER

Section 24.2-545 of the Code of Virginia allows the political party holding a primary to determine requirements for voting in the primary. The Republican Party of Virginia has determined that the following statement shall be a requirement of your participation. Any voter refusing to sign the statement form cannot vote in this Republican Party nominating process.

STATEMENT

My signature below indicates that I am a Republican.

_____
Signature of Voter*

_____
Printed Name of Voter*

_____
Email Address

_____
Phone

*Required

SBE-545(A)

REV 12/15

As Plaintiffs have already argued, the SBE cannot create its own political requirements for participation in the primary. But that is precisely what the SBE did here. The SBE is the one who created the form and it is, in part, the form itself that is the cause of the injury at issue in this case because it is the form that creates (along with the oath itself) the illegal voter intimidation. Here, *color of state law* is being used to make claims that can only serve to intimidate, and such power cannot be used to intimidate those who are rightfully entitled to vote. It is the SBE's form and its approval that is the source of this violation of the Voting Rights Act, the Constitution, and Virginia law.

*Second*, this Court can redress (indeed, prevent) Plaintiffs' injury by enjoining the SBE from using the oath. That is because "the prospective relief will remove the harm." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 148 (4th Cir. 2009) (emphasis omitted). Again, Defendants' reliance on *Marshall*, 105 F.3d 904, is misplaced. In that case, the source of the injury was the RPV's decision to hold an open primary. 105 F.3d at 906. The

court explained, "If the Virginia Republican Party voluntarily elects an 'open' primary, which it is legally entitled to do, then there is nothing this court can do to prevent the Virginia Republican Party from 'forcing' its members to vote with non-Republicans." *Id.* at 907. Here, this Court faces precisely the opposite situation. The RPV chose to hold an open primary but then the SBE (at the initial behest of the RPV) has decided to close the primary (in a manner beyond that requested by the RPV). That the SBE cannot do. The primary must remain open to all voters. Va. Code § 24.2-545; *Miller II*, 503 F.3d at 368.

But even if this Court disagrees and finds the injury is only traceable to the RPV's decision (which is a non-governmental actor not administering or paying for the primary and lacking the power to approve the final loyalty oath), the motion should still be denied because the RPV has now been joined as a party. And despite the SBE's protests to the contrary, the RPV does not have the power to exclude voters from the open primary. As the SBE itself said, "[I]f a party wants the State to bear the financial costs and administrative burdens of a primary election, then the party must agree with the State's requirement that *any* registered voter *may participate*." Brief for Appellants at 2–3, *Miller II*, 503 F.3d 360 (emphasis added).

## II. PLAINTIFFS HAVE ADEQUATELY PLED THEIR CLAIMS

Federal Rule of Civil Procedure 8(a) provides that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiffs did exactly that. As the Supreme Court has explained, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

7

which it rests.'" *Epos Tech. Ltd. v. Pegasus Techs. Ltd.*, 636 F. Supp. 2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Each of Plaintiffs' claims were pled with adequate specificity.

### A. Plaintiffs Adequately Pled Claims under the Voting Rights Act.

Plaintiffs have adequately pled their claims under §§ 11(b) and 2 of the Voting Rights Act ("VRA"). *First*, as to the § 11(b) claim, *see* 52 U.S.C. § 10307(b), Defendants chief complaint is that voter intimidation claims are "rare." Mem. In Supp. Of Mot. To Dismiss, at p. 6, (Page ID# 87). But rarer still are loyalty oaths as a condition to vote. And in any event, rarity is no grounds to dismiss a legal claim. *See* Fed. R. Civ. P. 12.

Further the Court is not called upon to make "unwarranted inferences" in this case. Mem. In Supp. Of Mot. To Dismiss, at p. 7, (Page ID# 86). It requires no imagination to see that the oath form is threatening. And whether Defendants view the oath as threatening is no the question: Plaintiffs do, and it creates precisely the same sort of state-sponsored harm that the VRA was intended to prevent. It contains clear and misleading threats. For example, the form cites the Virginia Code, making it appear as if the form is required under penalty of law. It leads with the underlined, capitalized phrase "<u>NOTICE TO VOTER</u>," and contains the menacing threat: "Any voter refusing to sign the statement form cannot vote in this Republican Party nominating process." A loyalty oath that forces a voter to declare himself a Republican without limitation or definition, on the spot, the day of voting while at the polling place is an attempt under color of state law to intimidate voters who are rightfully entitled to vote. This violates the Voting Rights Act. § 10307(b).

If there were any doubt about the threatening atmosphere that will be present on election day, one need only look at the news. School districts are considering increasing security

measures on primary day out of a concern of voter backlash to the oath. Antonio Olivo, Fearing Anger from Trump Voters, Va. School District May Close for the Primary, Washington Post (Jan. 12, 2016).[1] One school district is considering keeping kids home on primary day. *Ibid.* As Fairfax County's Electoral Board Chairman put it, "If you say: 'I don't want to do it,' I have to say: 'You don't get a ballot. . . . That's about as contentious as anything we can possibly be doing in a polling place on election day." *Ibid.* So not only is the SBE and the RPV threatening to disenfranchise Virginia voters, they are also risking the safety of school children. It is time to pull the plug on this disaster.

*Second*, plaintiffs adequately pled their § 2 claim. *See* § 52 U. S. C. § 10301(a). Plaintiffs alleged three ways in which the loyalty oath will amount to a § 2 violation: (1) it will disproportionately deter minority voters who cannot wait in line for hours to vote; (2) it will impose the burden of fear and backlash on minority voters who are forced, as a condition of voting, to publicly declare themselves a "Republican"; and (3) the loyalty oath amounts to a literacy test. Because Defendants cannot persuasively argue Plaintiffs have not alleged sufficient facts, Defendants resort to arguing the merits. But a motion to dismiss is no place to argue the merits. Instead, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

In any event, Plaintiffs' complaint does not present a "mere metaphysical possibility" that the oath requirement will create long lines, lead to backlash, and amount to a literacy test. *Ridge*

---

[1] https://www.washingtonpost.com/local/virginia-politics/fairfax-considers-closing-schools-on-contentious-super-tuesday-elections/2016/01/12/bbfcc564-b94a-11e5-829c-26ffb874a18d_story.html

*at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Instead, Plaintiffs have given the court ample "reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ibid.* (emphasis omitted). For example, Plaintiffs have already shown the loyalty oath will produce long lines. The news is replete with discussion of how this loyalty oath will be "a nightmare to implement." *Oath Required to Vote in Virginia Republican Presidential Primary*, NBC29, (Dec. 16, 2015) (statement of Olga Hernandez, League of Women Voters).[2] And election volunteers—the people on the ground who will have to enforce this unlawful rule—have already warned "the [oath] will create long lines." *Ibid.* Because this requirement is untested and neither the RPV nor the SBE has publicly provided any concrete information regarding the details of how this oath is to be implemented, the oath is certain to create long lines as poll volunteers and election officials stumble through this new requirement.

And it is not merely lines at issue here. When a minority voter, unfamiliar with voting—particularly in primaries—is faced with this official-looking, threatening form, sprung on them only after arriving at the precinct to vote and waiting in line to vote for some time, the minority voter will likely leave the precinct without casting a vote. These lines, bureaucratic red tape, and the hot lights of everyone watching and waiting for the minority voter to swear allegiance, are not mere "inconvenience[s]," *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 198 (2008), but rather insurmountable obstacles. *See* Ben Cady & Tom Glazer, Voters Strike Back: Litigating Against Modern Voter Intimidation, 39 N.Y.U. REV. OF L. & SOC. CHANGE 173,

---

[2] http://www.nbc29.com/story/30770194/oath-required-to-vote-in-va-republican-presidential-primary.

178 (2015). That local election officials are already bracing for "trouble" speaks volumes as to how potential voters, such as Plaintiffs, are already being viewed.

Further, it is no stretch of the imagination that given Virginia's unfortunate history of racially polarized voting, *see Collins v. City of Norfolk*, 883 F.2d 1232, 1240 (4th Cir. 1989), that Black voters who are publicly identified as Republicans will face backlash from their communities. And Defendants cannot seriously contest that the oath form amounts to a literacy test. One need only consider if an English-only speaker was presented the same form in Russian. Obviously the English-only speaker would not be able to read or understand the form. This concern is exasperated by the manner in which the form will be sprung on unsuspecting voters at the polls on election day.

Finally, all of these discriminatory burdens are clearly "linked to social and historical conditions that have or currently produce discrimination against members of the protected class." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 240 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) (internal quotation marks omitted). The SBE cannot deny that Blacks in Virginia are disproportionately poor and lacking in opportunities and that their condition is the direct result of Virginia's long and sordid discriminatory past. Indeed, it is undisputed that until 1966 Virginia imposed a poll tax and until 1974 it imposed an undisguised literacy test. *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 666 (1966); *Virginia v. United States*, 386 F. Supp. 1319 (D. D.C. 1974), *aff'd*, 420 U.S. 901 (1975). And Virginia's fight against civil rights is notorious. *See Loving v. Virginia*, 388 U.S. 1 (1967) (Virginia criminalized miscegenation); *Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1356 (4th Cir. 1989) (Virginia resisted school desegregation). Thus, voter qualifications which

disproportionately burden Blacks precisely because of their economic position caused by Virginia's shameful past are illegal. *See* § 10301(a).

In any event, the strength of the merits is beside the point in deciding this motion. A motion to dismiss may only be granted if Plaintiffs have not met the minimum pleading standard required. Fed. R. Civ. P. 12. But as the above clearly shows, Plaintiffs have met their burden.

**B.  Plaintiffs Adequately Pled Their Constitutional Claims.**

Defendants assert the First and Fourteenth Amendments "afford [Plaintiffs] no quarter." Mem. In Supp. Of Mot. To Dismiss, at p. 10 (Page ID# 91). Again, Defendants seek to argue the merits of the constitutional claims, which is far beyond the scope of a motion to dismiss. In any event, the SBE's oath requirement is subject to strict scrutiny and that it cannot survive. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. Bd. Of Ed. v. Barnette*, 319 U.S. 624, 642 (1943). The officials at the SBE, no matter how high they think they are, cannot foist this oath requirement onto Virginians.

"'Depend[ing] upon the extent to which a challenged regulations burdens First and Fourteenth Amendment rights,' the regulation will either face strict scrutiny review or a more deferential standard of review." *Sarvis v. Judd*, 80 F. Supp. 3d 692, 698 (E.D. Va. 2015) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). And state requirements that "impose a severe burden" upon protected rights, *Pisano v. Strach*, 743 F.3d 927, 933 (4th Cir. 2014), "must be narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (internal quotation marks omitted). Trying to evade their burden, which they cannot carry, Defendance suggest there are no "protected right[s] upon which the RPV ballot requirement

impinges." Mem. In Supp. Of Mot. To Dismiss, at p. 11 (Page ID# 93). The SBE instead offers the odd solution that "the voter who feels himself disenfranchised should simply join the party." *Id.* (quoting *Cal. Democratic Party v. Jones*, 530 U.S. 567, 584 (2000)). That is impossible in Virginia because there is no party registration. And this harkens back to the answer to literacy tests: just learn how to read. In any event, joining the Republican Party would still not allow Plaintiffs to vote for their favored candidate in the Republican Primary. As the SBE's own form states, *signing the form* is required: "Any voter refusing to sign the statement form cannot vote in this Republican Party nominating process." Thus, any voter, even a card-carrying Republican cannot vote unless he signs the form—a form that even asks for a voter's email and phone number. .

Instead of addressing the actual claims Plaintiffs brought, the SBE attempts to argue the RPV's First Amendment associational rights trump Plaintiffs' rights. Defendants argue, "The First Amendment reserves a 'special place' and 'special protections' for the 'process by which a political party selects a standard bearer who best represents the party's ideologies and preferences.'" Mem. In Supp. Of Mot. To Dismiss, at p. 12 (Page ID# 93). (quoting *Jones*, 530 U.S. at 575). That is certainly true in a certain context, but even if RPV's rights could scuttle Plaintiffs' claims (and the right to vote is not required to sit in the back of the constitutional-rights bus), the RPV gave up any associational rights when it freely decided to have an open primary, paid for and administered by Virginia, where "each registered voter of the Commonwealth shall be given an opportunity to participate in the presidential primary of the political party." Va. Code § 24.2-545.

The SBE points to *Miller II*, 503 F.3d 360, in an attempt to argue that applying "mandatory rules upon a political party 'causes significant injury to the First Amendment rights

13

of a political party.'" Mem. In Supp. Of Mot. To Dismiss, at p. 13 (Page ID# 94). (quoting *Miller II*, 503 F.3d at 371). Here, no one imposed mandatory rules on the RPV. It *chose* to have an open primary. And now it must suffer through the hangover it inflicted on itself, and risk that certain voters it views as undesirable will vote. It cannot close the open door championed by the Republican National Committee.

Moreover, Defendants take *Miller II* out of context. That case involved an as-applied challenge to Virginia's primary laws. The Court reasoned that because the Republican Party was essentially forced into the primary process (because the incumbent had the right to choose the process), Virginia could not stop the Party from imposing certain limits. *Id.* at 368–71.

But the case also, and more importantly for present purposes, involved a facial challenge to the open primary law. And the Court was quite clear: "[T]he 'forced association' that the Supreme Court has condemned simply is not present" in Virginia because "Virginia allows political parties to nominate candidates not only by state-run primary but also by other methods controlled and funded by the party." *Id.* at 367 (citation omitted). The two Supreme Court decisions that have held primary laws unconstitutional involved laws that were "both mandatory and exclusive." *Ibid.* In *Tashjian v. Republican Party of Connecticut*, the Court declared unconstitutional a Connecticut statute that required voters in any political party's primary to be registered members of that party. 479 U.S. 208, 210–14 (1986). The Court held the statute burdened the Republican Party's associational rights because it restricted the group of voters whom the Party could "invite to participate in the basic function of selecting the Party's candidates." *Id.* at 215–16 (internal quotation marks omitted). And in *Jones*, the Court struck down California's blanket primary system, where "each voter's primary ballot . . . lists every

candidate regardless of party affiliation and allows the voter to choose freely among them," because that violated the parties' associational rights. 530 U.S. at 569.

Virginia's political parties do not face a "mandatory and exclusive" method for choosing its nominees. *Miller II*, 503 F.3d at 362, 367. Instead, they can have an open primary if they want, or they can choose from a host of other options, including "a party convention, *see* Va. Code Ann. § 24.2-508(ii) (2006); a mass meeting, also known as a 'caucus'; and a party canvass or unassembled caucus, also called a 'firehouse primary.'" *Miller II*, 503 F.3d at 362. Here, the RPV freely chose to have an open, state-funded primary. So it freely gave up its associational rights. The RPV must face the consequences of its choice, the main one being "it must allow all voters to participate." *Id.* at 368.

### C. Plaintiffs adequately pled their state law claims.

As to the state law claims, Defendants again argue the merits. But the merits are on Plaintiffs' side, and in any event a motion to dismiss is no place for arguments on the merits.

*First*, the SBE did not "approv[e]" the RPV's loyalty oath as required by law. Va. Code § 24.2-545(A). The form the RPV proposed was radically different from the form the SBE promulgated. But Virginia law only allows the SBE to "approv[e]" requirements submitted by the political parties, not create its own requirements. *Ibid.* The SBE claims it had the authority to change the form because it has the power to "prescribe appropriate forms," Mem. In Supp. Of Mot. To Dismiss, at p. 14 (Page ID# 95) (quoting Va. Code § 24.2-105). That power, however, is circumscribed by § 24.2-545, which only permits the SBE to approve (as opposed to propose) any voting requirements.

*Second*, the SBE did not approve the loyalty oath 90 days before the election. *See* § 24.2-545. The SBE appears to claim it can approve requirements for elections at any time—even after

15

an election has been held. Mem. In Supp. Of Mot. To Dismiss, at p. 14 (Page ID# 95). But the only plausible reading of § 24.2-545 is that the SBE must approve any requirements 90 days before an election. The SBE missed that deadline by two weeks

*Third*, the SBE's argument that the loyalty oath is permitted by statute is wrong. The statute provides for only one type of oath, an oath to support the party's candidate. § 24.2-545. And even if that oath requirement is "merely illustrative, it still suggests that" no other pledge would be required because the statute provides no illustration of requiring a statement of *party* support. *Samantar v. Yousuf*, 560 U.S. 305, 316 (2010); *see also Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923) ("[A] word may be known by the company it keeps."). The statute certainly cannot confer unbridled discretion upon either the RPV or the SBE to impose any and all requirements they may arbitrarily concoct—but that seems to be precisely what they are suggesting.

*Fourth*, the SBE has no answer to the canon of constitutional avoidance. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). "[V]alidly conferred discretionary executive authority is properly exercised (as the Government has proposed) to avoid serious constitutional doubt." *Ariz. v. Inter Tribal Council of Ariz.*, 133 S. Ct. 2247, 2259 (2013). To avoid serious constitutional concerns, the Court must construe the Virginia statute to not permit the loyalty oath at issue. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated: January 12, 2016                           Respectfully submitted,


                                                                /*s*/ Chester Smith
                                                 Chester Smith
                                                 Smith Law Group, PLLC
                                                 293 Independence Boulevard, Suite 231
                                                 Virginia Beach, VA 23462
                                                 Phone: (757) 490-3181
                                                 Email: chucsmit@live.com