UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| STEPHEN A. PARSON, ET AL. ) | |
| ) | |
| V. ) | CIVIL NO. 3:16CV-13-MHL |
| ) | |
| JAMES B. ALCORN, ET AL. ) | |
| ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

The bedlam the Court witnessed today is a harbinger of what voters will face on election day. This bureaucratic confusion, uncertainty, and red tape is precisely the sort of chaos that deters minority voters from voting. *See* Ben Cady & Tom Glazer, Voters Strike Back: Litigating Against Modern Voter Intimidation, 39 N.Y.U. REV. OF L. & SOC. CHANGE 173, 178 (2015). In Court today, the State Board of Elections ("SBE") was unsure how to answer simple questions: What form will be sent to absentee voters? Which one will be given to in-person voters? Which form did the SBE approve? Is this requirement an oath? But most troubling, who introduced the additional language on the form? In particular: "Any voter refusing to sign the pledge form cannot vote in this Republican nominating process"—language the Republican Party of Virginia ("RPV") never asked the SBE to include and that we now know is false.

The SBE, at a minimum, violated state law when it created the form(s) at issue. The Court is now familiar with the intricacies Virginia Code § 24.2-545. But it bears repeating that the SBE did not "approve" the form submitted by the RPV. Instead, it introduced language on its own initiative. According to Mr. Cortes, state bureaucrats simply used what they had used before. But the form from 2012 was never actually used; the RPV withdrew their request in the face of litigation back then. So there is no merit to the claim that by adding in language the RPV

*did not request* somehow maintains SBE consistency. In any event, the Court can easily enjoin the oath as violative of state law for a separate reason. Mr. Cortes testified that on December 16, 2016, the Executive Director of the RPV requested the SBE change the word "pledge" to the word "statement." That request came within 90 days of the election and thus the Board was powerless to approve the request. *See* § 24.2-545. The result is *ultra vires* action.

The Court inquired whether plaintiffs have a private right of action under Virginia law. They do. *See* Complaint, p. 12 (PageID # 12). The actions of the SBE are not a Virginia-law-free zone. Potential voters plainly have a right to sue over such actions. As section 2.2-4026 of the Virginia Code provides, "[a]ny person affected by and claiming the unlawfulness of any regulation or party aggrieved by and claiming unlawfulness of a case decision *shall have a right* to the direct review thereof by an appropriate and timely court action against the agency or its officers or agents." Plaintiffs claim the SBE unlawfully promulgated the oath form—or rather, form*s*, as we learned for the first time today—and this Court has supplemental jurisdiction under 28 U. S. C. § 1367. If the Court wishes to avoid Plaintiffs' federal claims, it can thus enjoin the SBE from using any oath form because the form violated Virginia law: The RPV proposed its oath-requirement form too late, and the SBE was powerless to approve it. § 24.2-545.

But the state-law violations do not end there. The Court has now heard firsthand that *the State* is the source of the language: "Any voter refusing to sign the pledge form cannot vote in this Republican nominating process." The SBE claims it has the power to produce forms, but that power is surely limited to the ability to format, not introduce substantive changes to what political parties requested. It is a fundamental tenet of state and federal administrative law that administrative deliberations must transpire in public view; today confirms, though, that all the relevant decisions about the form were made in secret. Today, for the first time after countless

pages of briefing and nearly two hours into the hearing, the Court heard that provisional ballots are going to be provided at the polls on March 1, 2016. The SBE decided this, according to Mr. Cortes, last Friday—only *after* this suit was filed. This development makes the in-person voting form demonstrably false; if a voter does not sign he *will* be permitted to vote provisionally, contrary to what the form actually says. Beyond that, it proves two more important things.

*First*, the SBE is capable of changing its requirements and guidance to polling officials on a dime. The SBE can introduce a whole new procedure just days before absentee ballots are set to go out and mere weeks before election day. Moreover, all it took to send the FAQ form—albeit before the SBE had even approved an oath form—was an email. *See* Testimony of Mr. Cortes. If an email is sufficient to provide detailed, lengthy guidance to election officials—guidance which variously refers to this requirement as an "oath," a "statement," or a "pledge"—then an email is surely sufficient to tell officials "Don't use the oath form." The SBE's claim of bureaucratic inconvenience rings hollow. Evidently, they can easily and quickly create red tape, but removing that red tape is a unfair burden. How convenient.

*Second*, the last-minute revelation by the SBE reveals a new violation of the Equal Protection Clause and injects even more confusion into the voting process. Voters who vote in person on March 1 will apparently be permitted to *not* swear fidelity and fill out a provisional ballot—which may or may not be counted. We still do not know, just as the State's Election Commissioner did not know today. Voters can then, perhaps, challenge the oath requirement and seek to have their vote counted—assuming the form does not intimidate them into not trying to vote at all. But absentee voters do not have that luxury. They are faced with the binary decision: Sign and vote, or forfeit your right to vote in the 2016 Republican Primary. Voters must be treated equally; the State cannot favor ballots cast in person over those cast before.

Set against the morass of forms and bureaucratic noise are three plaintiffs, plaintiffs who represent the voiceless Virginian voters—Virginians who simply want to exercise their right to vote. Dr. Parson testified he wanted to vote in the primary but would not because of the oath requirement. His plight is not unlike many minority voters who wish to vote but are faced with the poll worker holding the baseball-bat of an oath. Intimidation these days may not be physical like in the past. But by requiring this form, the SBE and the RPV have harnessed the power of the very community from which Plaintiffs come. And they are wielding that power to keep the party primary pure. If the Constitution and the Voting Rights Act prevent anything, it surely prevents Virginia—that infamous defender of purity—from denying minority voters their rights by foisting upon them a useless, intimidating, misleading, and (as we now know) false form. And useless it is. The SBE told the Court that the RPV would not even receive the forms. What is the point then? It cannot be justified by building a network of voters or a database of potential Republican voters—confirming that the request for voters' email addresses and phone numbers has no reason to be on the form at all. The only justification is to exclude undesirable voters.

Finally, the Court asked whether Plaintiffs seek a prohibitory or mandatory injunction. Plaintiffs believe an order prohibiting the SBE from using the oath would be a prohibitory injunction. "Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). An injunction in this case would "maintain the status quo." *Ibid.* The status quo is the "last uncontested status between the parties which preceded the controversy." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012). The last uncontested status in Virginia was *no* oath form. Indeed, as the SBE has previously said, "Virginia has never implemented a state-run closed primary." Brief for Appellants at 2–3, *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007).

4

It cannot do so this year; the Court should maintain that status quo and issue the injunction.

Dated: January 13, 2016   Respectfully submitted,

/*s*/ Chester Smith
Chester Smith
Smith Law Group, PLLC
293 Independence Boulevard, Suite 231
Virginia Beach, VA 23462
Phone: (757) 490-3181
Email: chucsmit@live.com

## CERTIFICATE OF SERVICE

I, Chester Smith, hereby certify that on this 13th day of January, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

J. Duncan Pitchford, Asst. Atty. Gen. (VSB No. 87065)
*Counsel for Defendants*
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 371-0977
Facsimile: (804) 786-2650
jpitchford@oag.state.va.us

I, Chester Smith, further certify that I have served the following non-CM/ECF users by first class United States Mail, postage prepaid:

John L. Findlay, Registered Agent
Republican Party of Virginia, Inc.
115 East Grace Street
Richmond, Virginia 23219

I, Chester Smith, further certify that I have served a copy of the foregoing by electronic mail upon counsel for the Republican Party of Virginia, Inc., Chris Marston, at chris.marston@gmail.com.

/*s*/ Chester Smith
Chester Smith
Smith Law Group, PLLC
293 Independence Boulevard, Suite 231
Virginia Beach, VA 23462
Phone: (757) 490-3181
Email: chucsmit@live.com
*Counsel for Plaintiffs*

6